[Nos. 6867-6-III; 7048-4-III. Division Three. February 10, 1987.]

PATSY LASATER WILKINS, *Appellant,* v. GARY
LASATER, ET AL, *Respondents.*

Kenneth K. Watts, for appellant.

James K. Hayner and Minnick, Hayner & Zagelow, P.S., for respondents Lasater.

Larry B. Siegel and Reese, Baffney, Schrag & Siegel, for respondents Nunn, et al.

MUNSON, J.—Patsy Lasater Wilkins, a trustee of the Fred and Nell Lasater trusts, appeals a judgment holding a lease of trust farmland to a cotrustee was valid and that the trustee did not breach fiduciary duties while leasing the farmland. She contends the court erred in: (1) upholding a stipulation and finding the cotrustee did not breach his fiduciary duties as trustee; (2) holding the continued representation of the trusts during the litigation by their long-time legal representative was not a conflict of interest; (3) failing to award her attorney fees and costs; (4) excluding her husband, Herbert Wilkins, a nontrustee, from trustee meetings; and (5) she argues she was denied effective assistance of counsel. We affirm in part, reverse in part, and remand.

Nell and Fred Lasater died, testate, on June 13, 1946, and April 27, 1952 respectively. By separate wills, each created a testamentary trust funded from their half of the community property. These trusts, the provisions of which are virtually identical, provided for management by majority rule of three trustees.

The original trustees of these trusts were Lowden Jones, Elfred Lasater Nunn, and Redman Lasater. Mrs. Wilkins succeeded Mr. Jones as trustee in approximately 1955; Gary Lasater succeeded his father Redman Lasater, as trustee, after his death in 1968. Throughout the course of this action, the three trustees have included the plaintiff, Mrs. Wilkins; Mrs. Nunn, her sister; and Gary Lasater, their nephew. The three trustees are also beneficiaries of the

trusts.[1] The trusts' assets include stocks, bonds, and land which were originally part of Fred and Nell's family farm. As of 1983, the combined value of the trusts exceeded $2.6 million.

The Fred Lasater will provides in pertinent part:

[T]he said Trustees . . . shall farm and operate the lands of the estate, sell the crops, collect the income from all sources, pay taxes, insurance, interest on indebtedness and contract installments, and pay all necessary and proper expenses for labor, for the upkeep and protection of the property and for operating the same. The Trustees shall adopt rules and regulations for the efficient management of the trust property; they shall have power to sell and convey and transfer property of the trust estate . . . and shall not incumber the same unless it be for the purpose of refunding existing indebtedness against the same or any portion thereof, or for the purpose of paying state inheritance taxes and federal estate taxes should there not be sufficient funds from other sources available for such payment, in which event and for which purpose, authority to mortgage is granted the Trustees. They shall not incumber the income or crops except it be for the necessary working capital in operating.

The will continues:

The said Trustees shall have authority in their discretion . . . to grant unto any beneficiary or beneficiaries an advancement from the income in order to provide such beneficiary proper care and maintenance . . . The amounts so paid to any beneficiary shall be treated as an advancement to such one and shall be accounted for by him or her on the final distribution of the trust estate. The fact that such beneficiary at the time of being granted an advancement is also a Trustee of the estate and would otherwise pass on any advancement shall not prevent the allowance of such advancement if the other Trustees deem it proper to be made.

For purposes of this opinion, the provisions of Nell Lasa-

---

[1]The beneficiaries at the time this action was filed included: Mrs. Wilkins (one–third interest); Mrs. Nunn (one–third interest); and the four children of Redman Lasater (including Gary Lasater), who upon his death each received a one–twelfth interest, *i.e.*, equally sharing his one–third interest (⅓ x 4).

ter's will are identical.

For several years, the land was farmed by the individual trustees. A portion of the land was farmed from 1953 until 1969 by Mrs. Wilkins. Mrs. Nunn, likewise, farmed a portion of the land until 1972.

Gary Lasater began farming the trust land along with adjacent land which he owned independently, after the death of his father, Redman Lasater, in 1968. In 1972, Mr. Lasater entered into a 10–year lease with the trustees to farm the trust land as tenant. That lease was unanimously approved by all the trustees, including Mrs. Wilkins. Although that lease is not part of the evidence on appeal, the record indicates the lease terms provided for payment to the trusts of 33.3 percent of the grain crops on the trust land, with the tenant therefore retaining 66.6 percent of the crops. In 1982, after the lease expiration, Mrs. Wilkins, as trustee, objected to its extension. Mr. Lasater and Mrs. Nunn voted to extend the lease for 1 year over Mrs. Wilkins' objections. Consequently, Mr. Lasater continued to farm the trust land throughout the remainder of 1982.

In June 1983, Mrs. Wilkins commenced the present action, seeking an accounting of the trusts' assets, damages, and dissolution. Her complaint alleged: (1) the trusts violated the rule against perpetuities; (2) the trustees and beneficiaries were the same, thereby merging the legal and equitable interests; (3) Mr. Lasater had breached his duty of loyalty as trustee by voting himself as tenant of trust land and by using the property for his own benefit; (4) the provisions of the trusts prohibited leasing of the farmland to trustees; and (5) the duty to segregate and render accountings had been breached by the procedures used by Mr. Lasater as tenant.

Mrs. Wilkins sought a preliminary injunction to enjoin Mr. Lasater from continuing to lease the trust land while also participating as trustee. Following a hearing on June 20, 1983, the court orally granted the injunction, stating: "The Court prohibits the trustees from entering into any additional leases or extending . . . the present lease or any

type of renewal transaction with Mr. [Gary] Lasater . . . unless it is approved by the Court." This oral ruling was not reduced to writing or subsequently entered. Thereafter, her then attorney withdrew.

In early 1984, the trusts and Mr. Lasater, individually, petitioned the court for approval of a lease extension for Mr. Lasater. Following a hearing, the court orally denied the extension, stating

the trusts intended that the trustees operate the farm as princip[als], not as lessees. . . .

. . .

. . . There is absolutely no exclusionary exemption in this trust permitting self–dealing between the trustees and the trust.

The record indicates this ruling was neither reduced to writing nor presented to or signed by the judge.

Meanwhile, Mrs. Wilkins, whose sole income was derived from the trusts, was in dire financial need; she asked the other trustees to grant her an advance from the trusts; they refused. She then moved for an order forcing the trustees to grant the advance. The court issued a letter ruling, noting Mrs. Nunn and Mr. Lasater had abused their discretion in rejecting Mrs. Wilkins' request for an advance; it ordered the trustees to meet promptly in order to reconsider her request.

On March 5, 1984, the three trustees met in an attempt to reconcile their differences with respect to the requested advance and lease.[2] At the meeting, both Mrs. Nunn and Mr. Lasater again refused Mrs. Wilkins the advance, claiming the trusts had insufficient cash funds for such a purpose. Mrs. Nunn moved to grant Mr. Lasater a lease extension, so he could continue farming the land. After the motion was seconded by Mr. Lasater, they voted two to one for the extension.

---

[2]At the time of the meeting, Mrs. Wilkins was 67 years of age and almost totally deaf. She received no social security and had no health insurance; her sole means of support was her income as beneficiary under the trusts and fees received for being trustee. Moreover, her husband was disabled and unable to work.

The next day, Mrs. Wilkins again sought an order forcing the other trustees to grant her an advance. In his accompanying affidavit, her then attorney explained that contrary to the court's directions, the remaining trustees refused to grant Mrs. Wilkins an advance unless she, in turn, consented to Mr. Lasater's lease.

With this motion pending, the trustees met again on March 7 to consider the issue. Mrs. Wilkins was accompanied by her attorney. Following a lengthy discussion on the lease and advance and, upon the advice of her attorney, Mrs. Wilkins agreed to extend Mr. Lasater's lease through the 1987 crop year. In return, Mr. Lasater and Mrs. Nunn agreed not only to advance Mrs. Wilkins the requested funds, but also pay her other debts, as well as her attorney fees. These terms were set out in a written "stipulation" signed by the three trustees. Thereafter, Mrs. Wilkins' then attorney withdrew.

Prior to trial, Mrs. Wilkins requested court approval of her husband's attendance at trustee meetings as the other trustees had voted to exclude him.[3] The court ordered Mr. Wilkins excluded. At trial, the issues were limited to whether: (1) the March 7 stipulation extending Mr. Lasater's lease was valid; (2) Mr. Lasater had breached various fiduciary duties while acting as both tenant and trustee; (3) the attorneys for the trusts should have declined to represent the trusts when the litigation commenced; and (4) the court properly excluded Mr. Wilkins from attending trustee meetings. Mrs. Wilkins was represented by yet another attorney at trial.

The foremost contested issues arose with respect to whether Mr. Lasater had breached various fiduciary duties while acting as lessee as well as trustee. Both sides acknowledged he technically breached a trustee's duty of loyalty by voting to extend his own lease. Mrs. Wilkins also

---

[3]Mrs. Wilkins claimed the presence of her husband was necessary since she was almost totally deaf. Without his aid, she claimed she could not understand what was being discussed.

alleged self-dealing because he had (1) failed to account for approximately 60 acres of barley planted in 1979 and (2) planted over 400 acres of barley in another year, but never reported what had happened to 200 acres of that barley. Mr. Lasater admitted he had planted the 60 extra acres of barley in 1979, but subsequently destroyed it to comply with government subsidy requirements. With respect to the allegedly missing 200 acres of barley, he testified he, in fact, only planted 200 acres that particular year as he merely planted one crop instead of two.

Other issues with respect to Mr. Lasater's alleged breach of fiduciary duties involved the expenses he charged against the trusts for equipment and labor costs, fertilizer and other chemical expenses, and the costs associated with hauling the harvested grain to storage elevators. Mr. Lasater claimed his equipment and labor costs were comparable or less than the fees charged in other comparable farm leases in the area. An attorney from the law firm which represented the trusts testified Mr. Lasater's charges were commercially reasonable.

Likewise, Mr. Lasater's testimony indicated his fertilizer and hauling costs, paid partly by the trusts, were not only reasonable, but probably saved the trusts money. This testimony was again confirmed by the attorney; it also was supported by an informal audit conducted by Lemaster and Daniels, certified public accountants. Mrs. Wilkins also alleged he never presented the underlying bills for such cost to the trusts before being reimbursed. Mr. Lasater claimed he had presented some of the underlying bills to the trusts before he had received reimbursement for the expenses; the attorney testified Mr. Lasater presented the bills if asked.

Although the action was partly for an accounting, neither the trusts' attorneys nor Mr. Lasater presented the underlying bills or any other records detailing his expenses or earnings from lease of the farmland. Mr. Lasater admitted

he had: (1) never independently calculated how much fertilizer he used on the trusts', as opposed to his own, land which he also farmed;[4] (2) never presented the underlying fertilizer bills to the trusts; and (3) was unable to state whether he was making a profit from his lease transactions with the trusts.[5]

The court concluded: (1) the March 7, 1984 stipulation was binding and the lease valid; (2) Mr. Lasater had acted properly and had breached no fiduciary duties with respect to his dealings with the trusts despite his failure to present any records; (3) the trusts' law firm was properly retained as trial attorneys for the trusts; and (4) Mr. Wilkins was properly excluded from attending trustee meetings, although the court held Mrs. Wilkins could bring her daughter, lawyer, or accountant. Significantly, the court prescribed extensive guidelines for any future lessees of the trusts' land with respect to accountings and financial disclosure. Although the court found Mrs. Wilkins' action had benefited the trusts to some extent, it denied her request for attorney fees. She moved for reconsideration; that

---

[4]Apparently, Mr. Lasater purchased the fertilizer in bulk, spraying both the trusts' and his own adjacent fields at the same time. He charged the trusts for their part of these fertilizer costs by dividing the total fertilizer cost by the total number of acres sprayed (trust and nontrust land); thus, he obtained the cost per acre. He then multiplied the trusts' acreage by this number to arrive at the trusts' cost.

[5]Because of his inability to adequately explain whether he profited personally from the lease, the court finally stated, apparently in exasperation: "Mr. Lasater . . . obviously there is a problem here, as being a trustee and in dealing with the trusts and self–dealing and what have you. You have got to be able to explain with precision that you are not making some kind of a profit on this deal. And at this point, you know, without records and so on, I can't say that you have done that. You have got to be able to show these people you are not making a profit. I'm not saying you are or you aren't. I don't know if you are making a profit or losing money or breaking even, but you have got to be able to come into court when somebody asks you to and account. You are in a position of a trustee. You are dealing with this trust. And you have to lay it out, you know, and show that you aren't making a profit, because you aren't entitled to make one cut of a half a cent on this deal or anything else."

motion was denied. This appeal followed with Mrs. Wilkins being represented by new counsel.

## BREACH OF FIDUCIARY DUTIES

Initially, Mrs. Wilkins asserts Mr. Lasater breached several fiduciary duties while acting simultaneously as trustee and lessee. Under this assignment of error, she first contends the law forbids a trustee from dealing in his individual capacity with the trust property; thus, lease of trust land by a trustee is a per se breach of the duty of loyalty.

A trustee has such powers as are conferred by the terms of the trust and such "powers as are necessary or appropriate to carry out the purpose of the trust and are not forbidden". *Monroe v. Winn,* 16 Wn.2d 497, 508, 133 P.2d 952 (1943). The powers which the settlor intended to convey are gathered from the trust's language and from the nature and purpose of the trust. *Monroe,* at 508. Mr. Lasater and the trusts contend the provisions of the wills implicitly demonstrate the settlors contemplated the trustees leasing the land to themselves. We disagree.[6] The wills indicate a preference, if possible, for the trustees to manage the land collectively and to farm it *as trustees.* The wills do not indicate the trustees are to lease the land to themselves in their individual capacities while also acting as trustees. Without an explicit grant of such authority, we decline to impute an intent on the part of Nell and Fred Lasater to allow conduct that ordinarily would be construed as a breach of the fiduciary duty of loyalty.

A trustee owes to the beneficiaries of the trust the highest degree of good faith, diligence, fidelity, loyalty, and integrity; a trustee must act solely in the beneficiaries' interest. *Esmieu v. Schrag,* 88 Wn.2d 490, 498, 563 P.2d 203

---

[6]Mr. Lasater and the trusts also argue that because Mrs. Wilkins also leased the land in the past that she may not be heard to object to Mr. Lasater's lease. However, a trustee is not precluded from maintaining an action to compel redress of a breach of a cotrustee simply because she also participated in a past breach, Restatement (Second) of Trusts § 200, comment e (1959), as the action is for the benefit of the beneficiaries.

(1977); *In re Estate of Drinkwater,* 22 Wn. App. 26, 30–31, 587 P.2d 606 (1978). A trustee cannot deal with the trust property for his own profit or claim any advantage by reason of his relation to it, either directly or indirectly. *Tucker v. Brown,* 20 Wn.2d 740, 768, 150 P.2d 604 (1944); *In re Estate of Eustace,* 198 Wash. 142, 147, 87 P.2d 305 (1939).

This court has neither been cited to, nor found, a Washington decision involving a lessee of trust land, who also acted as trustee and additionally was a beneficiary of the trust. However, the weight of authority from other jurisdictions supports the proposition that a trustee of land is deemed to have committed a breach of loyalty by leasing trust land to himself. Restatement (Second) of Trusts § 170, comment *l* (1959); G. Bogert, *Trusts and Trustees* § 543(B), at 241–43 (2d rev. ed. 1978); 2 A. Scott, *Trusts* § 170.17, at 1352–53 (3d ed. 1967). *See Dennis v. Rhode Island Hosp. Trust Nat'l Bank,* 571 F. Supp. 623, 637 (D.R.I. 1983), *aff'd as modified,* 744 F.2d 893 (1st Cir. 1984); *Goldman v. Kaplan,* 170 F.2d 503, 506 (4th Cir. 1948); *Wilmington Trust Co. v. Carrow,* 14 Del. Ch. 290, 125 A. 350, 352 (1924); *Central Standard Life Ins. Co. v. Gardner,* 17 Ill. 2d 220, 161 N.E.2d 278, 288 (1959); *In re Will of Gleeson,* 5 Ill. App. 2d 61, 124 N.E.2d 624, 627 (1955); *In re Estate of Hill,* 79 N.J. Eq. 521, 82 A. 338, 344 (1912); *In re Estate of Fiorelli,* 134 N.E.2d 576, 580 (Ohio Ct. App. 1956); *Anderton v. Patterson,* 363 Pa. 121, 69 A.2d 87, 89 (1949). *But cf. Whiteley v. Babcock,* 249 S.W. 930, 933 (Mo. 1923) (settlor may permit lease to trustee by terms of the trust); *Whitelock v. Dorsey,* 121 Md. 497, 88 A. 241, 242 (1913) (lease by trustee of trust land may be permitted after court approval); *Waterbury v. Nicol,* 207 Or. 595, 296 P.2d 487, 494, 298 P.2d 211 (1956) (lease by trustee may be upheld where beneficiary consents and acquiesces).

Adherence to this strict construction of the duty of loyalty rests on three rationales:

> First, . . . it is difficult, if not impossible for a person to act impartially in a matter in which he has an

interest. . . .

. . . [A] trustee can not be expected to utilize his best, most objective and disinterested judgment in situations where that judgment may run counter to his own interest. . . .

. . . [T]he beneficiary is deprived of that disinterested and impartial judgment to which he is entitled. . . .

Secondly, the courts have realized that fiduciary relationships lend themselves to exploitation. . . . [T]he success of the trust relationship will depend on the ability of the beneficiary to trust the trustee. . . . The only way to insure that the beneficiary can sleep at night in free and easy reliance on the loyalty of the trustee is to remove all serious temptations to disloyalty.

Finally, . . . disloyal conduct is hard to detect. . . .

. . . [A] court, inquiring into his administration at a later date, cannot expect to match the trustee's knowledge. . . . A wide variety of determinations can generally be supported by plausible argument, and rationalizations made after the fact will generally be unassailable.

(Footnotes omitted.) Hallgring, *The Uniform Trustees' Powers Act and the Basic Principles of Fiduciary Responsibility,* 41 Wash. L. Rev. 801, at 808–11 (1966).

 We likewise prefer the rule that lease of trust land by a trustee ordinarily constitutes, per se, a breach of loyalty; such a rule has the prophylactic effect of preventing the trustee from *ever* putting himself in a position where his interest could *possibly* conflict with that of a beneficiary. *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545, 546, 62 A.L.R. 1 (1928). *See Magruder v. Drury,* 235 U.S. 106, 119–20, 59 L. Ed. 151, 35 S. Ct. 77 (1914). However, this strict rule is qualified by at least three possible exceptions: (1) an express provision by the settlor allowing the trustee to lease trust property; (2) court approval of such a relationship; and (3) the beneficiaries' confirmation, ratification, or acquiescence to the trustee's dealings with the trust, with full knowledge of the relationship. *See* G. Bogert, at 241–42; *Whiteley v. Babcock, supra; Whitelock v. Dorsey, supra; Waterbury v. Nicol, supra. See also Ryan v. Plath,* 20 Wn.2d 663, 667–70, 148 P.2d 946 (1944) (rule

that trustee cannot sell land to himself in his individual capacity is not absolute and may be confirmed or ratified by the beneficiaries).

Here, as noted above, the provisions of the wills do not explicitly allow the lease of the trusts' lands by a trustee and we decline to interpret them as so permitting. However, Mr. Lasater's rental of the land from 1972 to 1982 was approved by all the trustees and was apparently uncontested by the remaining beneficiaries; therefore, we decline to hold his lease during that period was a breach of the duty of loyalty. Likewise, with respect to the current lease, we conclude there is no per se breach of the duty of loyalty. Not only did Mrs. Wilkins stipulate to the lease in 1983, but the court approved it; there is no indication from the record that any other beneficiary contests the lease. Although Mrs. Wilkins assigns error to the trial court's conclusion on this issue, after careful review, we conclude her arguments are not well taken; we need not discuss that assignment further.

Nonetheless, Mrs. Wilkins also assigns error to the court's conclusion Mr. Lasater did not self–deal or otherwise breach his duty of loyalty by his actual conduct as tenant. She alleges he breached this duty as he profited from the lease of the farmland. Although Mr. Lasater testified he had not profited from the lease, he never adequately explained how he arrived at that conclusion. He admitted he had no set formula for paying a custom harvester that harvested the crops. He, likewise, admitted that although he charged the trusts hauling fees commensurate with commercial haulers, those haulers added a built–in profit to their fees. Moreover, at trial he presented no documents whatsoever demonstrating he had not, in fact, profited from the lease arrangement. In actuality, by not producing records of lease transactions, Mr. Lasater failed to render a true accounting, as required by trust law.

The burden of proof is on the fiduciary to demonstrate no breach of loyalty has been committed. *Hetrick v.*

*Smith,* 67 Wash. 664, 667–68, 122 P. 363 (1912). In an accounting, the burden of proving the propriety of challenged transactions rests with the trustee. G. Bogert, *Trusts and Trustees* § 970, at 401 (2d rev. ed. 1983). Obscurities and doubts in the accounting will be resolved against the trustee. A. Scott, at 1399. Here, Mr. Lasater claims he was never requested to bring the records relating to his lease transaction; however, one count of this action relates to Mrs. Wilkins' request for an accounting. We further note that it is virtually impossible to disprove the fiduciary breaches alleged here without such records. The trial court apparently believed his testimony that he had not profited from the lease; this court may not substitute its judgment for that determination. *Peoples Nat'l Bank v. Taylor,* 42 Wn. App. 518, 525, 711 P.2d 1021 (1985). Nonetheless, as noted above, one claim here is for an accounting, and Mr. Lasater's self–serving testimony is insufficient to meet what we view is the increased burden of proof he bears as a fiduciary. Without documentary evidence, in the form of the underlying bills and other records, he has not met his burden of disproving that he profited from the lease.[7] *See Dennis,* at 637; *Traub v. Traub,* 135 So. 2d 243, 244–45 (Fla. Dist. Ct. App. 1961); *see also In re Estate of Tembreull,* 37 Wn.2d 93, 102, 221 P.2d 821 (1950); *Simich v.*

---

[7]Mr. Lasater's charging of "commercially reasonable" rates is irrelevant to this determination; good faith is not a defense to a breach of trust. Restatement (Second) of Trusts § 201 (1959). In addition, G. Bogert, *Trusts and Trustees* § 543, at 217–18 (2d rev. ed. 1978) also states:

It is also immaterial whether the beneficiaries of the trust were financially damaged or not. Naturally, if there was no loss to the beneficiaries from the disloyal act, they may see fit to raise no objection to it, but the election is theirs. They alone (or successor trustees representing them) have the power to repudiate the disloyal act or to treat it as unobjectionable. The disloyal trustee has no choice in this matter.

. . .

It is not necessary that the trustee shall have gained from the transaction in order to find that it is disloyal. If the dealing presented conflict of interest and consequent temptation to the trustee, it will be stricken down at the option of the beneficiary, regardless of gain or loss to the trustee.

(Footnotes omitted.)

*Culjak,* 27 Wn.2d 403, 408, 178 P.2d 336 (1947); *Cederlund v. Cederlund,* 7 Wn. App. 320, 321, 499 P.2d 14 (1972). We also note Mr. Lasater, as an interested trustee, at least technically breached the duty of loyalty by voting himself as lessee.

■ Mrs. Wilkins next argues lease of the farmland constitutes an impermissible delegation of the trustee's fiduciary duty to manage trust assets. We disagree. Although trustees cannot delegate their duties to ensure tenant farmers properly keep the land productive, it would be unreasonable to impose any requirement that the trustees themselves must farm the lands. *See Meck v. Behrens,* 141 Wash. 676, 682, 252 P. 91, 50 A.L.R. 207 (1927).

Mrs. Wilkins also asserts Mr. Lasater breached his fiduciary duty to maintain and render accounts by failing to keep and later provide the other trustees with copies of his bills or receipts for fertilizer, harvesting, and trucking payments before being reimbursed by the trusts. *Dennis,* at 637; Restatement (Second) of Trusts § 172 (1979). Lemaster and Daniels, after its study of the trusts' billing practices, recommended that lessee expenses be billed directly to the trusts, a practice which inferentially must not have occurred before. Because of his failure to produce any records of these transactions, it is unclear whether he kept records or actually supplied his bills before being reimbursed. The testimony, however, including his own admissions, would indicate he did not maintain or render accounts at least some of the time. The record also indicates he may have failed to segregate fertilizer expenses from the trusts and his own farmland. This appears to be a breach of the strict duty to identify and segregate trust assets and expenses. Restatement (Second) of Trusts § 179 (1959). Although Mr. Lasater's breaches may not have been made with the conscious intent to profit personally from the trusts, as noted above, his good faith is irrelevant. *See* Restatement (Second) of Trusts § 201, comment *b* (1959); G. Bogert, *Trusts and Trustees* § 543, at 217–18 (2d rev. ed. 1978).

Given his failure to meet his burden of coming forward with an accounting to disprove these alleged breaches of fiduciary duty, the crucial issue becomes what is the appropriate remedy? Without the records, if any, of his transactions as lessee, it is impossible for this court to determine the extent of any possible breach of fiduciary duty committed by Mr. Lasater. Although we conclude he did not per se breach his duty of loyalty by acting in the dual capacity of lessee and trustee, we believe the record does not foreclose the possibility of self–dealing and other breaches of fiduciary duty. Because these allegations cannot conclusively be disproven without the records and because the complaint asked for an accounting which was not given, the cause is remanded for further proceedings, including a formal accounting to the trial court. On remand, Mr. Lasater is ordered to produce his records and receipts with respect to the relevant lease transactions. Additionally, after the current lease (granted by the stipulation) expires, if Mrs. Wilkins continues her objections to his dual role, Mr. Lasater must elect between continuing as trustee or attempting to continue as lessee. He is not permitted to function in a dual status without unanimous approval of the beneficiaries.

## ATTORNEY FEES

Mrs. Wilkins contends the trial court erred in failing to award her attorney fees. The court found: "That the plaintiff conducted the litigation in such a manner as to be time consuming and expensive to the trusts because of the five different attorneys she had during the proceedings and her unwillingness to resolve the disputes with anything less than total victory." Based on this finding the court denied Mrs. Wilkins her attorney fees "because of her methods of conducting the litigation" although it also concluded some of her claims had merit.

An award of attorney fees against the trust is vested in the discretion of the trial court. *Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 407, 663 P.2d 104 (1983). However, *Allard,* at 407, provides:

A trial court's discretion to award attorney fees, however, is not absolute. The court must determine the litigation is indispensable to the proper administration of the trust; the issues presented are neither immaterial nor trifling; the conduct of the parties or counsel is not vexatious or litigious; and that there has been no unnecessary delay or expense. Furthermore, the trial court must consider the result of the litigation.

The court's underlying consideration must be whether the litigation and the participation of the party seeking attorney fees caused a benefit to the trust.

(Citations omitted.)

Although Mr. Lasater's lease of the farmland may not have involved more than technical breaches of fiduciary duties, Mrs. Wilkins' action will have the effect of remedying these and any other more substantial breaches; ultimately, the beneficiaries will benefit from the action. Given the recognized difficulty of demonstrating, after the fact, that a trustee profited from a lease, Mrs. Wilkins' failure to ultimately demonstrate such facts is not a valid reason for denying her attorney fees. *See* Hallgring, 41 Wash. L. Rev. at 811.

Moreover, our review of the record does not indicate her unwillingness to settle the disputes among the trustees was unreasonable. Rather, it demonstrates Mrs. Wilkins, alone, against the other two trustees and the trusts' attorneys attempted to remedy what she correctly perceived as Mr. Lasater's questionable practices. Nothing in this record indicates why she had five different attorneys, although we note she had little money to pay attorney fees. We hold the trusts are liable for her costs and fees. Therefore, we remand this issue to the trial court for a determination of the costs and fees reasonably incurred by Mrs. Wilkins at trial. We note in passing, the trusts may recoup those expenses from Mr. Lasater if on remand it is determined he breached his fiduciary duties. *Allard,* at 408.

### Conflict of Interest

Mrs. Wilkins argues the court erred in failing to require the withdrawal of the trusts' law firm once it was discov-

ered one of the attorneys would be called as a witness at trial on behalf of the trusts. Former Code of Professional Responsibility DR 5-101(B) provided in part:

A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

Although the trusts argue the attorney's testimony related to uncontested matters, the record supports a contrary finding. His testimony often related to substantive, contested matters such as whether Mr. Lasater had presented the underlying bills to the trusts. Here, the law firm was aware he would be called as a witness at least 10 months prior to trial. The attorneys should have withdrawn from representing the trusts during the litigation; the law firm was not in a position, as legal representative of the trusts, to choose which trustees to represent in this litigation. The attorneys continued, often partisan participation constituted a conflict of interest. *Cf. U.S. ex rel. Sheldon Elec. Co. v. Blackhawk Heating & Plumbing Co.,* 423 F. Supp. 486, 489 (S.D.N.Y. 1976). We cannot say, however, the conflict prejudicially affected the outcome of the trial. *See Robuck v. Robuck,* 62 Wn.2d 917, 385 P.2d 50 (1963); *Ryan v. Ryan,* 48 Wn.2d 593, 295 P.2d 1111 (1956). Notwithstanding, on remand, the trusts must be represented by different counsel.

## EXCLUSION OF MR. WILKINS

Our review of the record reveals substantial evidence supporting the finding Mr. Wilkins was excluded from trustee meetings because of his disruptive nature. Mrs. Wilkins' civil rights were not violated as she is permitted to be accompanied by her daughter or other relevant professional to the meetings.

### Ineffective Assistance of Counsel

Finally, Mrs. Wilkins contends her counsels' poor trial preparation, discovery, and numerous errors constituted ineffective assistance of counsel; thus, she maintains she was denied her due process right to a fair trial. None of the cases cited by Mrs. Wilkins stand for the proposition she may be deprived of due process of law by ineffective assistance in a civil trial. Further, given her limited resources, the withdrawal of previous counsel, and the complexity of the litigation, we find this argument is not well taken.

In summary, we affirm the court's conclusions that: (1) the stipulation was valid; (2) Mr. Lasater's lease of trust land was not a per se breach of the duty of loyalty; (3) Mr. Wilkins was properly excluded from trust meetings. Additionally, we reject her ineffective assistance of counsel argument raised on appeal. We reverse on the issues of attorney fees and conflict of interest and remand for further proceedings on the issue of whether Mr. Lasater, in fact, breached various fiduciary duties while leasing the trust land. As part of these proceedings, an accounting is to be rendered to the court. Mr. Lasater shall appear and bring with him all relevant records. Mrs. Wilkins' reasonable costs and fees incurred at trial are also to be determined on remand.

Pursuant to RAP 18.1, Mrs. Wilkins is awarded attorney fees of $7,500 on appeal.

Reversed in part, affirmed in part, and remanded.

THOMPSON, A.C.J., and GREEN, J., concur.

Reconsideration denied March 13, 1987.