IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

In the Matter of the Estate of          )
                                        )          No. 34749-4-III
MARY TERESA MAIURI,                     )
                                        )          UNPUBLISHED OPINION
                        Deceased.       )

SIDDOWAY, J. — When a will is admitted for probate and a personal representative is appointed, known heirs, legatees and devisees are entitled to notice. A party who is entitled to notice but does not receive it may move to set aside orders that affect him or her and, because those orders are void, may do so at any time. But the curing of the jurisdictional defect does not require all probate proceedings to start over.

After reopening this estate at the petitioners' request, ordering an accounting, and conducting a trial, the trial court concluded that the additional relief being requested by the petitioners was not warranted. It reclosed the estate. While one of the reasons for its actions was in error, the others were not. Because its only error was harmless, we affirm.

FACTS AND PROCEDURAL BACKGROUND

On December 24, 1995, Mary Teresa Maiuri passed away. She was survived by three sons, Robert, Michael, and Charles Maiuri, and two grandsons, Jay and Marcus Maiuri.[1] Jay and Marcus are Robert's sons. Charles was developmentally disabled and at the time of Mary's death was living in the College Place home with her and Michael.

Mary's will was admitted to probate on December 29, 1995. Robert and Michael were appointed co-personal representatives. The most substantial assets of Mary's estate were two pieces of real estate: her College Place home and the five acres on which it was located, valued at a total of $155,000 in the inventory filed in October 1996, and property in Walla Walla valued at $130,000 at that time. Mary's will devised the Walla Walla property to Robert. It devised the College Place home, its contents, and an acre of the land on which it was located one-half to Michael and the other half in trust for Charles, with Robert to serve as trustee. It devised the remainder of her estate—the four acres of farmland adjoining her College Place home and what was later inventoried to be approximately $3,000 in value of furniture and bank account holdings—one-third to Robert, one-third to Michael, and one-third in trust for Charles, with Robert to serve as trustee. (The inventory also revealed approximately $48,500 in nonprobate assets: bank accounts jointly held for the most part with Charles.)

---

[1] Given the common surnames of the parties, first names are used throughout for the purpose of clarity. No disrespect is intended.

2

The terms of Mary's testamentary trust provided that upon Charles's death, any interest in the trust's half of the College Place home, the acre of land on which it was located, and its contents would pass to Michael. It provided that any remaining trust assets would pass in equal (one-fourth) shares to Robert, Michael, and grandsons Jay and Marcus.

The assets of the testamentary trust were not kept separate and designated as property of the trust even though Robert and Michael had the assistance of attorney R. F. Monahan[2] in carrying out their duties. Approximately 10 months after being issued letters testamentary, Robert and Michael, as co-personal representatives, conveyed the College Place home and the one-acre parcel to Michael, subject to a life estate in Charles. As co-personal representatives, they also conveyed to Michael the full 4 acres of farmland that was supposed to have been distributed 1-1/3 acre to Robert, 1-1/3 acre to Michael, and 1-1/3 acre in trust for Charles, with Robert as trustee. The conveyances took place on the day before Robert and Michael filed the inventory and filed a declaration closing the estate. The quit claim deed was prepared and recorded by the Roach & Monahan law firm. Michael and Charles continued to live together in the College Place home, and Michael and Robert together attended to Charles's personal, medical, and financial needs until Charles passed away in 2002.

---

[2] The Roach & Monahan firm also appears to have prepared Ms. Maiuri's will; it was witnessed by William Roach and by Geraldine Lyons, a secretary at the law firm.

Grandsons Jay and Marcus had not been identified as heirs, legatees or devisees in the petition for probate, were not served with notice of the pendency of probate, and were not served with notice when the probate was completed in October 1996. Jay and Marcus were about 28 and 24 years old, respectively, at the time of Mary's death.

Upon Charles's death, Mr. Monahan recognized that Jay and Marcus had rights under the testamentary trust created by Mary's will. The one and one-third acre of farmland that was supposed to have been held in trust for Charles and should have been available (or the proceeds of which should have been available) for distribution to Robert, Michael, Jay, and Marcus had been conveyed to Michael, however. Jay and Robert spoke with a new attorney during the 2003 time frame and notified Mr. Monahan that they now believed something was amiss with the estate distribution.

It was evidently agreed that to address the failure to properly administer the trust, $54,552.47 from two certificates of deposit that Charles had owned outside the testamentary trust, and that would have passed to Michael and Robert, would be shared with Jay and Marcus instead.[3] So instead of receiving the one-third acre of farmland that Jay and Marcus would each have received had the trust's one and one-third acre of farmland not been conveyed to Michael, each grandson received $13,184.15. Coincident

---

[3] Michael received $15,000, and the remainder was divided equally between Robert, Jay, and Marcus. It is reported that Michael received slightly more because he had not wanted to incur the penalty that was incurred by cashing in the certificates.

4

with the payments, Jay and Marcus signed documents acknowledging receipt of their "full distributive share" of Mary's estate. Clerk's Papers (CP) at 33-34.

In the trial below, Marcus explained why he signed the acknowledgment despite concern he had not received what he believed was his entitlement to part of his grandmother's farmland by recounting a conversation he had with attorney Monahan around April 2003:

> [THE COURT]: . . . [W]hat did the conversation consist of? What was it about?
>
> A. Dick, Mr. Monahan, basically said this is what you get, there is no ground to distribute. Mike took it. Your dad signed for it. Mike signed for it. There is nothing for you to get other than this little bit of money. Do you want the money or do you want to go get an attorney? This is all you get as your share, period. Sign the paper or don't.
>
> Q. Sign the paper or go get an attorney?
>
> A. Yeah.

Report of Proceedings (RP) at 60. The distributions were completed in April 2003.

In February 2015—19 years after Mary's death and 12 years after Charles's death—Jay and Marcus filed a petition asserting they were entitled to, but never received notice of the probate or its alleged completion. They asked the court to (1) reopen the estate, (2) set aside the declaration of completion, (3) remove Michael and Robert as co-personal representatives, (4) appoint Jay and Marcus as successor co-personal representatives, (5) order Michael and Robert to file an accounting, (6) order Michael and Robert to disgorge estate assets unlawfully received and compensate the estate for assets

wasted, and (8) award Jay and Marcus attorney fees and costs to be paid by Michael and Robert.

Following a show cause hearing at which only Michael appeared to resist the requested relief, the trial court set aside the declaration of completion of probate and reopened the estate. In a letter decision, it found that "the Declaration should be deemed void as a final decree for lack of proper notice to the Petitioners both at the beginning and at the conclusion of the probate (CR 60(b)(5)), and for equitable reasons arising from the wrongful distribution (CR 60(b)(l l))." CP at 199. But it reappointed Robert and Michael as co-personal representatives, with Michael to serve alone if Robert took no action to be reappointed. It also ordered them to file an accounting of their administration of the estate, and stated, "Following the submission of the accounting and supporting documentation, the Court upon motion by any party will consider whether a trial is necessary to address the equitable issues and to determine whether and to what extent the additional relief requested by the Petitioners is appropriate." CP at 52.

Michael filed an accounting a couple of months later, which the court described as "obviously made difficult by the passage of time and transfer of assets." CP at 199. Mr. Monahan had passed away by this time. After reviewing the accounting, the court found that a trial was necessary to determine whether Jay and Marcus were entitled to relief beyond what the court had already ordered.

Trial took place over two days. Only Marcus, Michael, and Geraldine Lyons, who was Mr. Monahan's secretary when the estate was being distributed, testified. Shortly following the hearing, the trial court issued a seven-page letter decision. Among its findings were that Marcus was sophisticated about real estate and believed in 2003 that he should have received a portion of the College Place farmland from his grandmother's estate but he and Jay nonetheless accepted distributions and signed acknowledgments of receipt of their shares of her estate. The court also found that Michael was not sophisticated and relied to a great extent on his brother Robert and on his attorney, Mr. Monahan.

Among the court's key conclusions were the following:

2. The rather obvious mistakes that were made in the handling of this Estate were not the result of extrinsic fraud but were rather the result of ignorance on the part of the copersonal representatives combined with overreliance on their attorney to fulfill their duties and to give effect to their mother's directions as set forth in her Last Will and Testament.
. . . .
4. While not provided formal notice of the pendency of the Estate, by 2003 Jay and Marc had actual notice that an estate had been opened and that they had an interest in the estate. While the Court is particularly concerned about the noncompliance with the notice requirements of the statute the Court is equally concerned about the passage of time since then. Even [*Pitzer v. Union Bank,* 141 Wn.2d 539, 9 P.3d 805 (2000)] recognizes that while not absolute, "the interest of finality is of paramount concern." According to CR 60(b), even when a judgment was procured by fraud (whether intrinsic or extrinsic), misrepresentation or other misconduct (Subsec.(4)), or when a judgment is void (Subsec. (5)), a motion to set aside the judgment "shall be made within a reasonable time." CR 60(b); *See Pitzer*, 141 Wn.2d at 551-52. Thirteen years is not a reasonable time.

7

> . . . Having heard the testimony and reviewed the evidence adduced at trial, and based upon the extent to which the Petitioners already had knowledge of the defects in the handling of the estate but chose to do nothing about the problem in 2003, the Court's decision is that this estate should be re-closed and the petition dismissed with prejudice.

CP at 201-02.

Jay and Marcus appeal.

## ANALYSIS

Jay and Marcus make seven assignments of error that we reframe and reorder. At issue on appeal is whether the trial court erred by:

- Retaining Michael Maiuri as personal representative after reopening the probate of Mary's estate (assignment of error 3),

- Entering a finding of fact that Jay and Marcus "chose in April of 2003 to accept the cash distribution, keep the peace, and do nothing to challenge the handling of their grandmother's estate"; implicitly ruling that Jay and Marcus waived any right to challenge the handling of Mary's estate; and failing to require Michael to disgorge estate assets and pay damages (assignments of error 4, 5 and 6);

- Ruling that the estate be reclosed (assignment of error 1);

- Ruling that the petition to reopen the estate was time barred (assignment of error 2); and

- Denying Jay and Marcus's motion for attorney fees and expenses (assignment of error 7).

*See* Br. of Appellants at 3-4. We address the issues in this order.

8

No. 34749-4-III
*In re Estate of Maiuri*

> *The trial court did not abuse its discretion when it reappointed Michael*
> *Maiuri as personal representative*

RCW 11.28.237 requires the personal representative of an estate to cause written notice of the appointment and the pendency of the probate proceeding to be served personally or by mail on each "heir, legatee and devisee of the estate and each beneficiary or transferee of a nonprobate asset" whose names and addresses are known to the personal representative.[4] The failure of a personal representative to provide the notice required by RCW 11.28.237 deprives the parties who are not notified of procedural due process and "amounts to a jurisdictional defect as to them, rendering the decree of distribution void." *Hesthagen v. Harby*, 78 Wn.2d 934, 942, 481 P.2d 438 (1971).

Having found following the show cause hearing that Robert and Michael failed to give required notice to Jay and Marcus, the trial court properly set aside the 1996 declaration of completion of probate as void for lack of proper notice.

The trial court was cautious in its findings of fact in light of the limited information available to it at that time. Its letter ruling noted that Michael testified at the show cause hearing that "[h]e relied on legal counsel as to how things should go in the

---

[4] Although the court concluded that the mention of the farmland in Mary's will "was not in the form of a specific devise," CP at 201, it found elsewhere that the co-personal representatives failed to give required notice to Jay and Marcus. Because Michael did not dispute their right to receive notice, we assume without deciding that notice was required to be given not only to the trustee of the testamentary trust but also to trust beneficiaries.

estate," and produced copies of acknowledgments by Jay and Marcus of receipt of their full distributive share of Mary's estate. CP at 51. The court's findings entered in support of the show cause decision stated that Robert and Michael "allegedly" transferred assets that should have been held in trust for Charles's benefit and that assets "allegedly" transferred "may have been" assets in which Jay and Marcus had a vested interest. CP at 64. It ordered Robert and Michael to submit an accounting, including a description and documentation of disposition of any real property of the testamentary trust.

Although Jay and Marcus asked the trial court to appoint them as co-personal representatives, the court reappointed Robert and Michael, although Robert declined to serve. Jay and Marcus argue that this was error after the trial court "had reopened the . . . estate on grounds that [Michael] and the co-personal representative had failed to name [them] beneficiaries, had failed to give them adequate notice, had acted in a manner permitting an inference of extrinsic fraud and had procured a void declaration of completion of probate." Br. of Appellants at 3.

RCW 11.28.250 authorizes the superior court to revoke a personal representative's letters testamentary following notice and hearing whenever it has reason to believe that the personal representative

> has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his or her charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate,

or has neglected to perform any acts as such personal representative, or for
any other cause or reason which to the court appears necessary.

RCW 11.68.070 provides that such removal is "in the discretion of the court." Grounds

for removal must be valid and supported by the record. *In re Estate of Beard*, 60 Wn.2d

127, 132, 372 P.2d 530 (1962). A court abuses its discretion when its decision is

manifestly unreasonable or based on untenable grounds or untenable reasons. *In re*

*Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012).

Jay and Marcus show no abuse of discretion by the trial court. It is the general

rule that if a fiduciary exercised due care in the selection and employment of an attorney

or other agent to assist him in the management of his trust, he is not absolutely bound by

the dereliction of such agent or attorney. *See Hesthagen*, 78 Wn.2d at 942. It was not

clear to the trial court at the show cause stage whether Jay and Marcus had been damaged

by any wrongdoing by Michael and Robert.

*The trial court's challenged finding of an implicit waiver of notice*
*and refusal to require Michael to disgorge estate assets and pay*
*damages are supported by the evidence*

Following Michael's delivery of an accounting in May 2015, the trial court set the

disputed issues that remained for trial. Following the trial, the court supplemented its

findings and conclusions from the show cause hearing with additional findings, including

the following:

▪ After Mary's death, no testamentary trust was established for Charles.

- When Charles died, there was no probate of his estate because any funds Charles owned were jointly held with Michael and/or Robert with right of survivorship.

- It can be inferred from the evidence that following Charles's death Mr. Monahan realized that Jay and Marcus were interested parties with whom there needed to be a settlement. Mr. Monahan's records included a notation that "'Mike will come up with funds to pay them off - so we need to figure out what each is owed.'" Accounts in which Michael and/or Robert had an interest were divided between Jay, Marcus, Robert, and Michael. CP at 201 (Finding of Fact 10).

- Upon division of the accounts belonging to Michael and Robert, signed receipts for the money received were signed by Jay and Marcus. The receipts were in evidence and bore the court caption of Mary's probate. Each stated, "The undersigned hereby acknowledges receipt of his full distributive share of the above entitled estate." CP at 33-34.

- The court's impression was that Marcus was a highly educated and sophisticated businessman, particularly knowledgeable about real estate and when he was offered $13,000 after Charles's death in 2002, he was aware that his grandmother's estate had been probated and he had the option to consult and attorney about challenging the handling of the estate. The court inferred that Jay was similarly knowledgeable. "Both chose in April of 2003 to accept the cash distribution, keep the peace, and do nothing to challenge the handling of their grandmother's estate." CP at 201 (Finding of Fact 14).

The trial court's challenged finding that Jay and Marcus "chose in April of 2003 to accept the cash distribution, keep the peace, and do nothing to challenge the handling of their grandmother's estate," is supported by substantial evidence: Michael's and Marcus's testimony and the receipts.

In challenging the trial court's implicit finding of a waiver, Jay and Marcus rely on breach of contract cases and the showing required to prove the waiver by a party of a contractual right. Br. of Appellants at 20-21, (citing *Mid-Town P'ship v. Preston*, 69 Wn.

12

App. 227, 233, 848 P.2d 1268 (1993) and *Fulle v. Boulevard Excavating*, 20 Wn. App. 741, 744, 582 P.2d 566 (1978)). But this case does not involve parties who negotiated and gave consideration for a contract right they are alleged to have waived. The relevant law is case law dealing with a party's waiver of statutorily-required notice of a proceeding. Where notice of a proceeding is statutorily required but not provided, the right to notice is waived by appearing in court and participating in proceedings. *Friese v. Adams*, 44 Wn.2d 305, 308, 267 P.2d 107 (1954); *In re Marriage of Steele*, 90 Wn. App. 992, 997-98, 957 P.2d 247 (1998) (lack of personal jurisdiction for failure to give notice is waived where a party impliedly consents to the exercise of jurisdiction).

Jay and Marcus signed receipts that were apparent on their face as acknowledgments in the probate of Mary's estate that they received their full distributive share. This appearance and participation in the probate of Mary's estate was sufficient to operate as a waiver of the statutory notice requirement.

Jay and Marcus devote no argument to their assignment of error to the trial court's failure to require Michael to disgorge assets or pay damages. Assignments of error that are neither briefed nor argued are deemed abandoned. RAP 10.3(a)(5); *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 689 n.4, 974 P.2d 836 (1999). We also observe that Jay and Marcus's more direct claim was against their father; it was the duty of Robert as trustee of the testamentary trust to identify and segregate the assets of the trust and keep the beneficiaries reasonably informed about its administration and material facts

13

necessary for them to protect their interest. RESTATEMENT (SECOND) OF TRUSTS § 179

(Am. Law Inst. 1959),[5] (cited with approval by *Wilkins v. Lasater*, 46 Wn. App. 766,

779, 733 P.2d 221 (1987)); RCW 11.98.072(1). And Robert was, of course, a co-

personal representative.

### *The court did not err in ordering that the estate be reclosed*

Following trial, the court concluded that Mary's estate should be reclosed. In an

order entered in August 2016, it ordered the estate closed, canceled a lis pendens that had

been filed, discharged Michael as personal representative, and dismissed with prejudice

Jay and Marcus's petition and a cross claim by Michael.

Jay and Marcus assign error to the order reclosing the estate, which they contend

"reinstat[ed] a declaration of completion of probate that had been properly set aside as

void." Br. of Appellants at 3. They mischaracterize the effect of the court's order. In

March 2015, following the show cause hearing, the trial court set aside the declaration of

completion filed in October 1996 and ordered the estate reopened. It determined

following trial that seven years after that declaration of completion, Jay and Marcus

chose to accept funds and acknowledge receipt of their full distribution from the estate. It

determined that nothing more needed to be done in the probate proceeding. Its order did

---

[5] "The trustee is under a duty to the beneficiary to keep the trust property separate from his individual property, and, so far as it is reasonable that he should do so, to keep it separate from other property not subject to the trust, and to see that the property is designated as property of the trust."

not reinstate the 1996 declaration of closing but recognized that the probate could be reclosed.

### *The court's only error was in ruling that the petition to reopen the estate was time barred, but the error was harmless*

The trial court's only error was in stating in its conclusions following trial that even when a judgment is void, a motion to set aside the judgment shall be made within a reasonable time. It relied on an unfortunate statement in *Pitzer*, following a discussion of CR 60(b)(4) and (5), that "[i]n all cases, a motion under CR 60 must be brought within a 'reasonable time.'" 141 Wn.2d at 552. In the immediately prior paragraph, the *Pitzer* court discussed the fact that void decrees have no force, and quoted a law review article by Professor Trautman for the proposition that "'[t]here is no time limit'" for vacating void judgments "'as a judgment entered without jurisdiction is void.'" *Id*. (quoting Philip A. Trautman, *Vacation and Correction of Judgments in Washington*, 35 WASH. L. REV. 505, 530 (1960)).

CR 60(b) has long included the language that a motion for relief from a judgment or order "shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken." Washington courts have long held, however, that based on the very concept of voidness, a party can move to set aside a void judgment at any time. *E.g.*, *In re Marriage of Leslie*, 112 Wn.2d 612, 618, 772 P.2d 1013 (1989); *Servatron, Inc. v. Intelligent Wireless Prod., Inc.*, 186

15

Wn. App. 666, 679, 346 P.3d 831 (2015) ("There is no time limit to bring a motion to vacate a void judgment."); *Allstate Ins. Co. v. Khani*, 75 Wn. App. 317, 323-24, 877 P.2d 724 (1994); *Brenner v. Port of Bellingham*, 53 Wn. App. 182, 188, 765 P.2d 1333 (1989) ("motions to vacate under CR 60(b)(5) are not barred by the 'reasonable time' or the 1-year requirement of CR 60(b)" (footnote omitted)). Courts have a nondiscretionary duty to vacate void judgments. *In re Marriage of Markowski*, 50 Wn. App. 633, 635, 749 P.2d 754 (1988).

The court's misstatement of the law was harmless, because it was only one basis for the actions taken by the court. The court's actions were all proper.

*The trial court did not err in denying Jay and Marcus's motion for attorney fees and expenses*

Both parties requested an award of attorney fees in the trial court, and both requests were denied. Jay and Marcus argue that the denial of an award of their fees was error because their actions benefitted the estate. Inasmuch as we affirm virtually all of the trial court's actions that caused it to find no benefit to the estate, we affirm its denial of fees as well.

FEES ON APPEAL

Both parties request an award of attorney fees and costs on appeal. RAP 18.1, together with RCW 11.96A.150, authorize this court to make a fee award in its discretion. We exercise our discretion to deny fees to both parties.

No. 34749-4-III
*In re Estate of Maiuri*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

17