[No. 4351–II.  Division Two.  September 8, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. JEROLD GENE ECKLUND, *Appellant.*

*Anthony Savage,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* for respondent.

PEARSON, J.—Jerold Ecklund appeals from his conviction of first degree murder. RCW 9A.32.030. There are two issues presented on appeal. The first is whether the trial court erred by denying defendant's motion for a mistrial after admitting and subsequently striking the testimony of a particular witness. The second is whether the trial court erred by admitting the expert testimony of an FBI serologist, who based his testimony on the results of laboratory tests performed by an assistant working under his supervision. We hold that the trial court did not err in either regard and accordingly affirm defendant's conviction.

On the evening of July 4, 1979, defendant was present at a tavern located on Bainbridge Island. There he became acquainted for the first time with Betty Jensen, who was present at the tavern with her sister. Over the course of the evening, defendant and Ms. Jensen were observed conversing and kissing each other. They departed the tavern together and were last observed by a Winslow police officer

at approximately 1 a.m. that morning (July 5) parked in defendant's car.

Betty Jensen's body was discovered at about 7 a.m. on July 5, lying on the ground in a parking area near the eastern end of Agate Pass Bridge, which connects Bainbridge Island with the peninsula. She had been shot four times with a .38 caliber pistol and was estimated to have been dead 6 hours. Because defendant had last been seen with her, he was sought for questioning and arrested on July 6. Although defendant denied any knowledge of Jensen's death, subsequent police investigation of the homicide scene and of defendant's residence and automobile produced substantial circumstantial evidence linking him to the crime. On July 11, defendant was charged by information with first degree murder, committed with premeditated intent and while armed with a deadly weapon. Defendant was brought to trial before a jury in September 1979. He appeals his conviction.

At trial, the State presented the testimony of Dean Jones, a longtime friend of defendant's. Over defendant's objection, Jones was permitted to recount to the jury certain statements made by Ecklund some 3 years previously. The substance of Jones' testimony was that, following defendant's return from a 1976 trip to Hawaii, he revealed to Jones that while in Hawaii he had fired his pistol at a prostitute as she was running out of his hotel building. Based on the State's memorandum of authorities depicting the alleged similarities between that incident and the facts of the present case, the trial court ruled Jones' testimony was admissible under an exception to the general rule of ER 404(b).[1] *See State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952). However, after hearing Jones' testimony the court ordered that it be stricken from the record and

---

[1] ER 404(b), in effect at the time of defendant's trial, provides that:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

admonished the jury to disregard his statements as a part of the evidence.

■ Defendant argues that the prejudice created by admitting the testimony could not be removed by a curative instruction and that he is entitled to a new trial. Accordingly, he assigns error to the trial court's failure to grant his motion for a mistrial. We hold that the trial court did not err. Although in some situations the prejudicial effect of evidence of other crimes or wrongful acts cannot be removed by a curative instruction, *i.e.*, where the evidence introduced is inherently prejudicial and of such a nature as to impress itself upon the minds of the jurors (*State v. Miles*, 73 Wn.2d 67, 436 P.2d 198 (1968)), the trial court has broad discretion in determining whether an error can be cured by such an instruction. *State v. Downs*, 11 Wn. App. 572, 523 P.2d 1196 (1974).

> The trial judge can impartially observe and appraise the impact of inadmissible testimony upon the jury. His discretionary judgment that a corrective instruction and admonition effectively cures an error should be respected by the appellate court unless the record demonstrates that beyond a reasonable doubt the refusal to grant a new trial denied the defendant a fair trial.

*State v. Thrift*, 4 Wn. App. 192, 196, 480 P.2d 222 (1971). *See also State v. Yuen*, 23 Wn. App. 377, 381, 597 P.2d 401 (1979).

Here the State presented Jones' testimony towards the end of its case in chief, after it had presented overwhelming circumstantial evidence linking defendant to the homicide.[2] His testimony about the incident in Hawaii was brief and rather ambiguous. He could not recall whether defendant had indicated the gun was aimed at anybody when fired. Our reading of the entire record convinces us that the tes-

---

[2]We are somewhat dismayed by the risk the State took in presenting Jones' testimony to the jury without having first presented it to the trial court in the form of an oral offer of proof. Perhaps the problem stems from a basic misunderstanding of the scope of the exceptions under ER 404(b) and *State v. Goebel, supra.* In any event, this entire issue could have been avoided had the State initially presented Jones' proffered testimony outside the presence of the jury.

timony was not so prejudicial as to deny defendant a fair trial. The trial court did not abuse its discretion by denying defendant's motion for a mistrial.

The State also presented the testimony of FBI serology expert Donald Boughton. He was permitted to testify as to the results of certain tests performed on blood spots found on the shoes defendant was wearing on the night of the homicide. The summary report upon which he based his testimony was a compilation of results of laboratory tests performed by a technician working under his supervision and control and recorded on laboratory work sheets. Neither copies of the work sheets nor copies of the final report were introduced into evidence. Defendant asserts that because Boughton did not personally perform the laboratory tests, his testimony is inadmissible hearsay and its admission denied defendant his constitutional right of confrontation. U.S. Const. amend. 6; Const. art. 1, § 22. We disagree.

After reviewing the substance of Boughton's entire testimony, we find that it was admissible into evidence under either of two separate legal theories. First, under the second sentence of ER 703[3] an expert's opinion is admissible (even if the facts or data on which it was based were not admissible) if the data were "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences".

■■ In the comment to the second sentence of rule 703, it is suggested that before the trial judge admits the opinion evidence he should find that the underlying data are of a kind reasonably relied upon by experts in the particular field in reaching conclusions. Further, since the rule is concerned with trustworthiness of the resulting opinion,

---

[3]ER 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

the judge should not allow the opinion if (1) the expert can show only that he customarily relies upon such material, and (2) the data are relied upon only in preparing for litigation.

Here, Boughton testified from a summary report compiled from laboratory work sheets completed by his technician, and from his personal dictations made during his review of the contents of those work sheets. Although to a significant degree he based his conclusion that the spots contained blood on the opinion of his technician, as laboratory supervisor it was his ultimate responsibility to review the testing procedures as detailed in the work sheets and to reach an independent decision on the procedure he would use in reporting the results of the tests. This is the method by which he testified he formulated his opinion in this case. He further testified that this was the method by which he had been trained to handle the laboratory work performed by his technician, and that all other experts in the office followed the same procedure. There was also testimony that information furnished by the laboratory is relied upon by law enforcement officials in conducting investigations where no particular suspect is involved. Although these investigations may eventually result in a criminal prosecution, the tests are not being specifically prepared for use in litigation.

We have found no cases precisely deciding whether the testimony of an FBI agent (who is trained in laboratory analysis) may be based on his opinion regarding laboratory tests conducted by a technician working under his supervision and direction. However, admissibility of conclusions under ER 703 is left to the sound discretion of the trial judge. 3 J. Weinstein & M. Berger, *Evidence* § 703[2] (1978). We are satisfied that both prongs of the second sentence of the rule were established in this case, namely, that other experts rely on the data in reaching conclusions, and the procedures are followed and the data used for purposes other than litigation.

After the laboratory work sheets were disclosed to defendant, the court ordered a recess in the trial to permit

defendant's counsel to review the material in detail. Further, the court provided defendant with an *opportunity to* fully cross–examine Boughton on the subject after the recess, and this opportunity was extensively pursued. In the circumstances, we find no abuse of discretion in admitting the testimony.

▇ The evidence was also admissible under RCW 5.45-.020, the Uniform Business Records as Evidence Act. In *State v. Rutherford,* 66 Wn.2d 851, 405 P.2d 719 (1965), the court addressed the precise issue presented here. There an expert testified at trial by referring to a report which he compiled from oral and written reports made to him by others who participated in the testing procedures. Since the report itself was found to be admissible under RCW 5.45-.020, the court held that so, too, was the testimony as to the record's contents by the person who compiled the record, particularly since the opposing party did not show any motive for falsification by the witness or any reason his testimony should be considered untrustworthy. *State v. Rutherford,* 66 Wn.2d at 854.

We find the *Rutherford* analysis to be applicable in this case. Boughton's testimony makes clear that the summary report and laboratory work sheets, made in the regular course of business at or near the time of the act, would have been admissible under RCW 5.45.020 had they been offered into evidence. As such, Boughton's testimony about the content of the report was also admissible. Defendant has not shown that Boughton had any motive to falsify the test results or that his testimony was untrustworthy. Accordingly, we hold that the trial court did not abuse its discretion by admitting the evidence. *See State v. Rutherford, supra. See also State v. Kreck,* 86 Wn.2d 112, 542 P.2d 782 (1975); *State v. Taylor,* 486 S.W.2d 239 (Mo. 1972); *State v. Boehme,* 71 Wn.2d 621, 430 P.2d 527 (1967).[4]

---

[4]Several Washington cases have dealt with the admissibility of other types of police reports under the Uniform Business Records as Evidence Act. In *State v.*

We affirm.

REED, C.J., and PETRICH, J., concur.

---

*Bradley,* 17 Wn. App. 916, 567 P.2d 650 (1977) this court held that a computer printout listing the actions of the police in response to a telephone call is a record of an event made in the regular course of police business. In *State v. Medley,* 11 Wn. App. 491, 524 P.2d 466 (1974), this court held that a Pierce County Sheriff's fingerprint record was admissible under the Uniform Business Records as Evidence Act.

The prevailing position in other jurisdictions is that police reports are admissible if the report is made in the regular course of police business and it is the regular course of police business to keep such a report. *See generally Police Reports as Business Records,* 77 A.L.R.3d 115, § 5 (1977). "Incident" or "arrest" reports were held admissible in *Johnson v. State,* 253 A.2d 206 (Del. 1969) and *Scott v. County of Nassau,* 43 Misc. 2d 648, 252 N.Y.S.2d 135 (1964). "Incident" or "arrest" reports were held inadmissible in *People v. Bazaure,* 235 Cal. App. 2d 21, 44 Cal. Rptr. 831 (1965), *cert. denied,* 384 U.S. 1026, 16 L. Ed. 2d 1032, 86 S. Ct. 1951 (1966) and *State v. Masse,* 24 Conn. Supp. 45, 186 A.2d 553 (1962). Speed test cards were held admissible in *State v. Ing,* 53 Hawaii 466, 497 P.2d 575 (1972), but inadmissible in *People v. Crant,* 42 Misc. 2d 350, 248 N.Y.S.2d 310 (1964).

In *People v. Foster,* 27 N.Y.2d 47, 261 N.E.2d 389, 313 N.Y.S.2d 384 (1970) and *People v. Crant, supra,* it was argued that a police report should not be admitted under the business records exception if the record was prepared for use in a court proceeding. The argument was rejected in *Foster.* In *Crant* the court accepted the argument stating that the "shopbook" rule was designed to permit incidental testimonial use of records which are made and kept primarily for nontestimonial purposes. *See also* E. Cleary, *McCormick on Evidence* § 308 n.49 (2d ed. 1972).