41 P.3d 1204 (2002)
STATE of Washington, Respondent,
v.
Sean Paul NATION, Appellant.
No. 19698-4-III.
Court of Appeals of Washington, Division 3, Panel Seven.
March 7, 2002.
*1206 John Troberg, Colville, for Appellant.
Allen C. Nielson, Deputy Prosecuting Attorney, Colville, for Respondent.
*1205 KURTZ, C.J.
Sean Paul Nation appeals from Stevens County convictions of possession of methamphetamine, possession of marijuana, and bail jumping. He contends the court erred in (1) denying his motion to sever the bail jumping count, and (2) allowing a crime lab supervisor to give hearsay testimony pertaining to chemical analysis performed by a nontestifying subordinate technician. We affirm the bail jumping conviction, but reverse and dismiss the two drug charges.
Mr. Nation was charged on June 22, 2000, with the two possession counts involving methamphetamine and marijuana, and one count each of use of drug paraphernalia and third degree driving while license suspended. The charges stemmed from a vehicle stop in Colville.
John A. Troberg was appointed as Mr. Nation's counsel; Mr. Nation was granted conditional release pending trial. He acknowledged in writing that he understood the release conditions, including that failure to appear as required for all future court hearings is a crime punishable by imprisonment. When Mr. Nation failed to appear as required for a September 1 trial status hearing, the court issued a bench warrant for his arrest. On September 13, the State filed a supplemental information adding a bail jumping charge.
Mr. Nation filed a motion to sever the bail jumping charge based upon the following affidavit of Mr. Troberg:
Status hearing was set for Friday, September 1, 2000. Mr. Nation failed to appear. Monday was Labor Day. On Tuesday, September 5, 2000, I had court in Republic and preparations for a jury trial commencing Wednesday, September 6, 2000. On... September 6, ... I called Mr. Nation and reminded him of his court date; he agreed to appear the following day and in fact did appear in court on September 7, 2000. In the meantime, the State filed a Supplemental Information charging Bail Jumping on September 6, 2000.
The undersigned is therefore in a position of being a witness on Mr. Nation's behalf on the substance of my telephone conversation with him on ... September 6.... Since I cannot ethically serve as his advocate in court and also a witness on his behalf, it is respectfully submitted that the court should grant this request to sever the bail jumping count from the previous four counts and to appoint separate counsel *1207 so that the undersigned would be free to testify on Mr. Nation's behalf.
Clerk's Papers (CP) at 26.
Mr. Troberg apprised the court as an offer of proof that Mr. Nation had told him he was cutting firewood with his stepfather and simply forgot about his September 1 court date. The court denied the motion to sever on the basis any testimony of Mr. Troberg would be inadmissible self-serving hearsay.
At trial, the State produced substantial evidence of Mr. Nation's possession of the purported marijuana and methamphetamine. To prove the actual content of these substances, the State produced the testimony of Kevin Fortney, a forensic scientist who supervises the chemistry section of the Washington State Patrol Crime Laboratory. The testing was actually performed by one of Mr. Fortney's technicians, Arnold Melnikoff, who was unavailable to testify because he was on vacation.
Mr. Fortney testified that since he does the same type of work as Mr. Melnikoff and reviews it on a routine basis, he could identify the substances based upon Mr. Melnikoff's notes. Mr. Fortney gave further foundation testimony that a technician writes notes of test observations, places those notes in a case file, and then generates a report. That report is subjected to technical peer review by another analyst or by Mr. Fortney himself. The report is then sent back to the submitting agency along with the evidence. As custodian of the office files, Mr. Fortney personally obtained Mr. Melnikoff's notes from the files and recognized the handwriting and methodology to be Mr. Melnikoff's. Mr. Fortney said the peer review is an example of how forensic scientists use the notes and observations of other forensic scientists to formulate their own opinions.
Over standing defense objection based on hearsay, the court then allowed Mr. Fortney to use Mr. Melnikoff's notes to explain the types of testing and analyses performed and the results of each test. Mr. Fortney then gave his own opinion based upon this data that the substances involved were without a doubt marijuana and methamphetamine.
With regard to the bail jumping count, the State produced evidence at trial that Mr. Nation failed to appear for the September 1 status hearing despite signing the order stating conditions of pretrial release. Mr. Nation testified he missed the hearing because he was cutting wood with his stepfather, William Gumm, and "just forgot." Report of Proceedings (RP) at 101. He would have attended the hearing had he remembered. He received a telephone call from Mr. Troberg on September 6, refreshing his recollection of when he was supposed to be in court. Following that phone call, the plan was for Mr. Nation to come to court the next day to work things out. He did so and was again conditionally released. Mr. Gumm similarly testified that Mr. Nation was cutting firewood on September 1, and that he gave Mr. Nation a ride to court on September 7.
The prosecutor asked Mr. Nation on cross-examination whether his attorney told him on September 6 that a warrant had been issued for his arrest. Mr. Nation responded in the affirmative, but said he nevertheless came to court the next day of his own free will and not because of the warrant. The prosecutor then confirmed with Mr. Nation that it still took him one day to come to court.
Mr. Nation renewed his motion to sever at the close of all the evidence, arguing the prosecutor's inquiries on cross-examination put Mr. Troberg in the position of being a witness because he was the only one who knew that court scheduling caused the reappearance delay. The court denied Mr. Nation's motion and entered into evidence the following stipulation agreed to by both counsel:
The parties stipulate that on September 6, 2000, Mr. Nation was contacted by his attorney in regard to coming to court to quash a warrant for his failure to appear on September 1, 2000. No judge was available on September 6, 2000, and Mr. Nation appeared before the court by arrangement of the parties on September 7, 2000.
RP at 123-24. The court also gave the following curative instruction proposed by the defense:
The issue of whether the defendant appeared in Court on September 6, 2000 or September 7, 2000, is irrelevant to your verdict on the charge of bail jumping. The *1208 fact that he did not appear in Court the same day he was contacted by his attorney, on September 6, 2000, appearing instead the following day, is not to be considered by you in reaching a verdict on this charge.
CP at 74, Instr. No. 19.
Mr. Nation appeals from his convictions for methamphetamine and marijuana possession and bail jumping.[1]
Mr. Nation first contends the court committed reversible error by denying his motion to sever the bail jumping count because Mr. Troberg became a witness who Mr. Nation was entitled under the Sixth Amendment right of compulsory process to call at trial. This required Mr. Troberg to withdraw on that charge and the court to sever it for trial. RPC 3.7; Wilkins v. Lasater, 46 Wash.App. 766, 733 P.2d 221 (1987). Mr. Nation argues the error was prejudicial, given that bail jumping is not a strict liability crime and Mr. Troberg was the only person who knew that court scheduling caused the one-day delay in reappearing. Mr. Nation concludes these circumstances may be critical to the jury's determination of whether he knowingly failed to appear in the first instance, thus entitling him to present Mr. Troberg's live testimony instead of being forced into a written stipulation. State v. Pirtle, 127 Wash.2d 628, 652, 904 P.2d 245 (1995) (citing State v. Rice, 110 Wash.2d 577, 598-99, 757 P.2d 889 (1988)). We find no error.
First, CrR 4.3(a)(2) authorizes joinder of offenses "based on the same conduct or on a series of acts connected together." For joinder purposes, a charge of bail jumping is sufficiently connected to the underlying charge if the two offenses are related in time and the bail jumping charge stems directly from the underlying charge. State v. Bryant, 89 Wash.App. 857, 866-67, 950 P.2d 1004 (1998), review denied, 137 Wash.2d 1017, 978 P.2d 1100 (1999). Joinder is proper as a matter of law if these requirements are met and the defendant is not prejudiced thereby. Id. at 867, 950 P.2d 1004. CrR 4.4(b), on the other hand, requires the court to sever offenses whenever "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." A court's ruling on a motion to sever charges is reviewed for abuse of discretion. State v. Bythrow, 114 Wash.2d 713, 717, 790 P.2d 154 (1990).
Mr. Nation's severance request stems from RPC 3.7, which provides: "A lawyer shall not act as advocate at a trial in which the lawyer ... is likely to be a necessary witness." An attorney must withdraw when it is likely he or she will present testimony related to substantive contested matters. See Wilkins, 46 Wash.App. at 781-82, 733 P.2d 221; Wagner v. Wagner, 1 Wash. App. 328, 333, 461 P.2d 577 (1969). A defendant is entitled to a new trial if, as a matter of law, a breach of a professional canon prevented a fair trial. See State v. Sullivan, 60 Wash.2d 214, 373 P.2d 474 (1962); Ryan v. Ryan, 48 Wash.2d 593, 600, 295 P.2d 1111 (1956); Wagner, 1 Wash.App. at 333, 461 P.2d 577.
The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor...." This right applies to the states through the Fourteenth Amendment. Washington v. Texas, 388 U.S. 14, 17-19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The right to compel attendance of witnesses "is in plain terms the right to present a defense." Id. at 19, 87 S.Ct. 1920.
An error impacting a defendant's Sixth Amendment right to compel attendance of witnesses is of constitutional magnitude and will be considered harmless only if the state can show beyond a reasonable doubt that the jury would have reached the same result in the absence of the error. State v. Maupin, 128 Wash.2d 918, 928-29, 913 P.2d 808 (1996). But the right applies only to witnesses who are material to the defense. State v. Smith, 101 Wash.2d 36, 41, 677 P.2d 100 (1984) (citing Washington, 388 U.S. at 23, 87 S.Ct. 1920); State v. Wimbish, 100 Wash. *1209 App. 78, 82, 995 P.2d 626, review denied, 141 Wash.2d 1022, 10 P.3d 1075 (2000). It is the defendant's burden to establish materiality. Wimbish, 100 Wash.App. at 82, 995 P.2d 626.
Mr. Nation has not met that burden. First, Mr. Troberg's offered testimony that Mr. Nation told him he missed the court date because he simply forgot is inadmissible, self-serving hearsay offered to bolster Mr. Nation's assertion he did not knowingly fail to appear. State v. Stubsjoen, 48 Wash.App. 139, 147, 738 P.2d 306 (1987) (out-of-court admissions of party not admissible as exception to hearsay rule when self-serving). And, Mr. Nation gave the same explanation when he testified, making Mr. Troberg's proffered testimony repetitious in any event. See State v. Stirgus, 21 Wash.App. 627, 640-41, 586 P.2d 532 (1978).
In addition, the agreed stipulation explaining that Mr. Nation waited one day to come to court because no judge was available clarified his own testimony as to the events of September 6 and 7. A written stipulation is binding on the parties and the court. Reilly v. State, 18 Wash.App. 245, 253, 566 P.2d 1283 (1977). Moreover, the court also gave Mr. Nation's proposed curative instruction that his waiting one day to reappear was not to be considered in reaching a verdict. See State v. Fitzgerald, 39 Wash.App. 652, 662, 694 P.2d 1117 (1985) (instruction proposed by defense cannot be later cited as error). In these circumstances, Mr. Nation's cases, cited for the proposition that parties are not required to accept stipulations and may prove their case by producing evidence, are not controlling. Pirtle, 127 Wash.2d 628, 904 P.2d 245 (no abuse of discretion when state allowed to refuse stipulation as to murder victim's identity and use in-life photos to prove identity); Rice, 110 Wash.2d 577, 757 P.2d 889 (defendant's offer to stipulate to victim's identity did not negate relevance of in-life photographs).
Given the stipulation and curative instruction, any possible prejudice arising from the State's confirming with Mr. Nation on cross-examination that he waited an extra day to reappear was cured beyond a reasonable doubt. See State v. Colbert, 17 Wash.App. 658, 665, 564 P.2d 1182 (1977) (corrective instruction may neutralize prejudice arising from prosecutor's improper examination of defendant). Mr. Nation thus fails to show that Mr. Troberg became a material defense witness who was required to withdraw. Accordingly, the court did not abuse its discretion in refusing to sever the bail jumping count. Bythrow, 114 Wash.2d at 717, 790 P.2d 154.
Mr. Nation next contends the court erred in permitting Mr. Fortney to give opinion testimony under ER 703 based upon Mr. Melnikoff's hearsay notes and report that the substances involved were methamphetamine and marijuana. Such hearsay statements repeating opinions of third parties are not subject to any hearsay exception and are inadmissible. State v. Martinez, 78 Wash.App. 870, 879-80, 899 P.2d 1302 (1995); People v. Campos, 32 Cal.App.4th 304, 308, 38 Cal.Rptr.2d 113 (1995); State v. Towne, 142 Vt. 241, 453 A.2d 1133 (1982). Furthermore, ER 705 cannot be used to make admissible the specific notes, testing data, and reports by a nontestifying witness otherwise barred as hearsay. State v. Anderson, 44 Wash.App. 644, 652, 723 P.2d 464 (1986).
The State responds that admission of Mr. Fortney's testimony based on Mr. Melnikoff's notes may be upheld under the business records exception to the hearsay rule because Mr. Fortney was custodian of the records and testified how the test notes were made in the regular course of business. State v. Ecklund, 30 Wash.App. 313, 319-20, 633 P.2d 933 (1981). And, as Mr. Melnikoff's supervisor, it was permissible under Ecklund for Mr. Fortney to rely on those notes to formulate his own opinion. We disagree with the State.
The court's decision to admit expert testimony is reviewed for abuse of discretion. State v. Stenson, 132 Wash.2d 668, 715, 940 P.2d 1239 (1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1193, 140 L.Ed.2d 323 (1998). A court abuses its discretion when its decision is based on untenable grounds or is manifestly unreasonable or arbitrary. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). This includes when its discretionary decision is contrary to law. State v. Williamson, 100 Wash.App. 248, 257, 996 P.2d 1097 (2000).
*1210 1. ER 703
Washington case law allows admission of expert opinion based on data interpreted by another when certain requirements of ER 703 are met. Ecklund, 30 Wash.App. at 318-19, 633 P.2d 933; see also State v. Russell, 125 Wash.2d 24, 74-75, 882 P.2d 747 (1994). ER 703 provides:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
But if these requirements are not met, ER 705[2] may not be used as a mechanism for admitting otherwise inadmissible evidence as an explanation of an expert's opinion. Anderson, 44 Wash.App. at 652, 723 P.2d 464 (citing 5A KARL B. TEGLAND, WASHINGTON PRACTICE § 312 (2nd ed.1982)); see also Martinez, 78 Wash.App. at 879, 899 P.2d 1302.
And, absent an exception to the hearsay rule, hearsay statements of the opinions of third parties are inadmissible. See Martinez, 78 Wash.App. at 880, 899 P.2d 1302 (ER 703 not designed to allow witness to summarize and reiterate all manner of inadmissible evidence); Campos, 32 Cal. App.4th 304, 38 Cal.Rptr.2d 113 (expert may not reveal on direct examination the content of reports prepared or opinions expressed by non-testifying experts); Towne, 142 Vt. 241, 453 A.2d 1133 (one expert may not put in evidence of the opinion of a nontestifying expert without running afoul of the hearsay rule).
In Ecklund, the court set out the framework for admitting expert testimony under ER 703. First, the judge should find the underlying data are of a kind reasonably relied upon by experts in the particular field in reaching conclusions. And second, since the rule is concerned with trustworthiness of the resulting opinion, the judge should not allow the opinion if (1) the expert can show only that he customarily relies upon such material, and (2) the data are relied upon only in preparing for litigation. Ecklund, 30 Wash.App. at 317-18, 633 P.2d 933. Thus, as stated in the Comment to ER 703, "The expert must establish that he as well as others would act upon the information for purposes other than testifying in a lawsuit." See Ecklund, 30 Wash.App. at 318, 633 P.2d 933.
In Ecklund, an FBI serology expert was permitted to give opinion testimony based upon results of laboratory tests performed by his subordinate technician and recorded on laboratory work sheets and a final report not introduced into evidence. Although the expert based his conclusions significantly on the opinion of the technician, he was also the laboratory supervisor with knowledge and ultimate responsibility for all office testing procedures and decisions. There was also testimony that information furnished by the laboratory was relied upon by law enforcement officials for investigations when no particular suspect is involved. Although such investigations may eventually result in a criminal prosecution, the tests were not being specifically prepared for use in litigation. Ecklund, 30 Wash.App. at 318, 633 P.2d 933. The court thus upheld admission of the testimony under ER 703 because both prongs of the second sentence of the rule were met. Ecklund, 30 Wash.App. at 318-19, 633 P.2d 933.
Just like the expert in Ecklund, Mr. Fortney testified to the procedures used by everyone in his office and to his ultimate supervisory responsibility over the methods and results reached by Mr. Melnikoff. He also said it is typical to rely on the data of a subordinate technician to reach his own conclusion. But he gave no testimony that others outside his office customarily rely on the material other than for litigation purposes. When voir dired by defense counsel, he stopped short of giving such information and in essence stated the tests are prepared for *1211 court testimony. Thus, the second part of the ER 703 test was not met and it was an abuse of discretion for the court to admit Mr. Fortney's testimony under the rule. Williamson, 100 Wash.App. at 257, 996 P.2d 1097.
2. Business Records ExceptionRCW 5.45.020
The State contends Mr. Fortney's testimony was nevertheless admissible under the business records exception to the hearsay rule, RCW 5.45.020, because the record supports that theory. See State v. Butler, 53 Wash.App. 214, 217, 766 P.2d 505 (1989) (admission of evidence on incorrect basis is not error if other proper basis exists); Ecklund, 30 Wash.App. at 319, 633 P.2d 933.
RCW 5.45.020 provides:
A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.
In Ecklund, the court also upheld admission of the FBI expert's testimony under the business records exception to the hearsay rule because the testimony made clear that the summary report and laboratory worksheets made in the regular course of business at or near the time of the act would have been admissible under RCW 5.45.020 had they been admitted into evidence. Ecklund, 30 Wash.App. at 319, 633 P.2d 933; see also State v. Medley, 11 Wash.App. 491, 499, 524 P.2d 466 (1974) (law enforcement fingerprint record properly admitted as a business record even though person who took the fingerprint not called as a witness).
The recent decision in State v. Neal, 144 Wash.2d 600, 30 P.3d 1255 (2001), pertaining to admissibility of reports of nontestifying chemical experts is analogous here. The question in Neal was whether the court abused its discretion in admitting into evidence a certified copy of a laboratory test report, when the certificate lacked the name of the person from whom the evidence was received for testing as required by CrR 6.13(b). The report at issue was hearsay because it was an out-of-court statement by the expert who tested a substance and the statement was offered to prove the truth of its contents as methamphetamine. Neal, 144 Wash.2d at 605, 30 P.3d 1255 (citing ER 802) ("[h]earsay is not admissible except as provided by these rules, by other court rules, or by statute").
CrR 6.13(b) establishes one such exception to the hearsay rule, allowing for admissibility of a certified lab report in lieu of a forensic scientist's live testimony. The rule provides:
(1) Certification Required. Subject to subsection (b)(3) of this rule, the official written report of an expert witness which contains the results of any test of a substance or object which are relevant to an issue in a trial shall be admitted in evidence without further proof or foundation as prima facie evidence of the facts stated in the report if the report bears or has attached a certification stating that the certifier has performed a test on the substance or object in question, the name of the person from whom the substance or object was received, the certificate is attached to a true and complete copy of the certifier's official report, the report was made by the certifier, and the qualifications of the certifier to make such tests. The certificate shall be signed by the certifier with the title of his office and his business address and telephone number.
CrR 6.13(b). The rule does not violate a defendant's constitutional right to confront witnesses so long as all of its substantive requirements are strictly complied with. Neal, 144 Wash.2d at 607-08, 30 P.3d 1255.
In Neal, the certificate was insufficient and thus inadmissible hearsay because it stated only that the tester received the substance from the "Tacoma Crime Laboratory Evidence Vault," and did not specify the name of the person from whom it was received. Id. at 606, 30 P.3d 1255. The court's abuse of discretion in admitting the report was prejudicial error because without it the evidence was insufficient to support the conviction. Id. at 608-09, 611, 30 P.3d 1255.
*1212 Neal forecloses the State's claim that the business records exception applies here. The notes and report of the nontestifying expert, Mr. Melnikoff, were not admitted into evidence. And, there is no evidence in the record as to the particular person from whom the tester, Mr. Melnikoff, received the substances. Mr. Fortney gave no such testimony. The deficiency in proof is tantamount to that in Neal and carries through to Mr. Fortney, whose opinion testimony stemmed solely from Mr. Melnikoff's work. Thus, unlike the records in Ecklund and Medley, it cannot be said on the record presented that Mr. Melnikoff's report would have been admissible if offered into evidence.[3] This court therefore cannot uphold on business record grounds the admission of Mr. Fortney's opinion testimony.
Because Mr. Fortney's opinions do not comply with ER 703, and no other hearsay exception applies, the court abused its discretion allowing his testimony that the controlled substances were marijuana and methamphetamine. State v. Williamson, 100 Wash.App. 248, 257, 996 P.2d 1097 (2000). The error is prejudicial because without Mr. Fortney's testimony, the State has not produced evidence from which a rational trier of fact could find each element of the possession of marijuana and methamphetamine crimes beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). The appropriate remedy is therefore to reverse and dismiss those two charges. Neal, 144 Wash.2d at 611-12, 30 P.3d 1255.
The bail jumping conviction is affirmed. The possession of marijuana and possession of methamphetamine convictions are reversed and the matter remanded for dismissal of those charges.
SCHULTHEIS and KATO, JJ., concur.
NOTES
[1] The jury acquitted Mr. Nation of the paraphernalia charge and he earlier pleaded guilty to driving while license suspended.
[2] ER 705 provides:

"The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the judge rules otherwise. The expert may in any event be required to disclose the underlying facts or data on cross examination."
[3] The State's additional cites cases, State v. Kreck, 86 Wash.2d 112, 119, 542 P.2d 782 (1975) and State v. Walker, 83 Wash.App. 89, 97-98, 920 P.2d 605 (1996), are also not on point. In both cases, the expert reports were admitted in evidence without needing to prove that the test author was unavailable. The State's other cited case, State v. Ross, 42 Wash.App. 806, 811, 714 P.2d 703 (1986), similarly recites the principle that a properly admissible business record, if sufficiently reliable, does not violate the confrontation clause. None of these cases involved the situation presented here.